**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BARRY J. ARPIN, | : | Case No. 3:25-cv-1713 (SRU) |
|     Plaintiff, | : | |
| | : | |
|     v. | : | |
| | : | |
| Dr. BRYAN KENNEDY, *et al.*, | : | |
|     Defendants. | : | |

**<u>INITIAL REVIEW ORDER</u>**

The plaintiff, Barry J. Arpin, is a sentenced inmate currently incarcerated at Willard-Cybulski Correctional Institution ("WCCI") in the custody of the Connecticut Department of Correction ("DOC").[1] He commenced this action *pro se* under 42 U.S.C. § 1983 against the following seven defendants: DOC Chief Medical Officer Dr. Byron Kennedy; DOC Disability Rights Coordinator Colleen Gallagher; Physician Assistant Hannah Sullivan and Dr. Freston, employees at Osborn Correctional Institution ("Osborn CI"); Medical Provider Dr. Lupis, a WCCI employee; Dr. Yu Liang, a general surgeon with University of Connecticut Health Correctional Managed Health Care ("UCONN CMHC"); Dana Dalton, a supervisor for the Connecticut Department of Health. Compl., Doc No. 1 ¶¶ 4-10.

Arpin claims that the defendants violated his rights under the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment. *Id*. ¶ 86. He also alleges conspiracy in deprivation of rights, violations of state law, and violations of DOC Administrative Directives and the Health Insurance Portability and Accountability Act ("HIPAA"). *Id*. ¶¶ 86-91. He seeks damages and injunctive and declaratory relief. *Id*. ¶¶ 92-102.

---

[1] Information on the DOC website shows that Arpin was sentenced on March 7, 2011, to twenty years' imprisonment, and he is currently housed at WCCI. *See* https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=362018 (last visited July 23, 2026). I take judicial notice of this public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

After initial review of the complaint under 28 U.S.C. §1915A(a), I conclude that Arpin's complaint must be dismissed against all the defendants in their individual and official capacities for failure to plead a plausible Eighth Amendment deliberate indifference claim and Fourteenth Amendment equal protection claim. Accordingly, I also conclude that Arpin cannot state a constitutional claim for violations of DOC Administrative Directives or HIPPA and I decline to exercise jurisdiction over any state law claims.

## I.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from the requested relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims, include the grounds upon which the claims are based, and demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.    ALLEGATIONS

Arpin alleges the following factual allegations, which I consider to be true for the purpose of this initial review.

2

While Arpin was housed at Osborn CI, on July 10, 2023, Arpin "detected the presence of what he thought could be a hernia[,]" but he continued to work in the laundry room and submitted a request to be seen by medical staff. Compl., Doc No. 1 ¶ 16. On July 13, 2023, Arpin and other inmates were required to move to a different block due to maintenance issues, and on July 15, 2023, they were all moved back to their original block. *Id*. ¶ 17. Arpin claims that because of the move, he had to carry all his possessions and his mattress to the new housing area, which added to his injury. *Id*.

Between July 11, 2023, and August 9, 2023, Physician Assistant ("PA") Sullivan examined Arpin, and she verified the presence of an inguinal hernia and ordered a CT scan to confirm that Arpin did in fact have an inguinal hernia ("hernia").[2] *Id*. ¶ 21. On October 5, 2023, PA Sullivan rescheduled Arpin's CT scan "because the order had apparently been lost." *Id*. ¶ 22. PA Sullivan indicated it would take an additional two to three weeks for the CT scan. *Id*.

On November 6, 2023, Arpin's wife sent emails to DOC Chief Medical Officer ("CMO"), Dr. Kennedy, and Dr. Anwar, the Chairman of the Senate Public Health Committee, regarding Arpin's hernia not being treated, but did not receive a response. *Id*. ¶¶ 18, 30. On November 26, 2023, Arpin went to medical for an emergency visit due to pain from the hernia, and he was given Tylenol, but medical staff did not examine him and refused his request for a truss.[3] *Id*. ¶ 23. On November 29, 2023, PA Sullivan prescribed Arpin a truss. *Id*. ¶ 24.

On December 19, 2023, approximately eleven weeks after PA Sullivan had ordered a CT scan for the second time, and after Arpin had experienced six months "of pain and suffering," he

---

[2] Arpin states that an inguinal hernia is "an abdominal wall hernia," which is "a protrusion of the intestine through an opening or area of weakness in the abdominal wall . . . [and] appears in the crease of the groin or in the scrotum." Compl., Doc No. 1 at 14 n.2.

[3] Arpin states that a "truss" is a "special belt with a thick piece of material, worn by somebody suffering a hernia to support the muscles. Compl., Doc No. 1 at 23 n.3.

was transported to UCONN Health for a CT scan to verify the presence of his hernia. *Id.* ¶ 26. On December 20, 2023, Arpin completed a "Cologuard test," which "yielded negative results." *Id.* ¶ 19. Dr. Nikelly,[4] a physician and gastrointestinal specialist with the DOC, advised Arpin that a "Cologuard test is a suitable substitute for a colonoscopy." *Id.*

On January 3, 2024, Arpin was transferred from Osborn CI to WCCI, and from January 2024 through March 2024, he went without any medical treatment or follow up. *Id.* ¶ 34. On March 11, 2024, Arpin was called to WCCI medical, and he was informed that he was scheduled for a trip to UCONN for surgical consultation for his hernia. *Id.* ¶ 35. On March 20, 2024, Arpin received the results of the CT scan, which indicated the presence of possible "Helicobacter pylori [and] a peptic ulcer," in addition to the hernia. *Id.* ¶ 37. On March 21, 2024, Arpin met with Dr. Lupis for the first time and they discussed the results of the CT scan. *Id.* ¶ 38.

On August 13, 2024, Arpin was transported to UCONN Health for a hernia surgery consultation. *Id.* ¶ 39. Arpin saw Dr. Liang, a general surgeon at UCONN CMHC, and he claims that he felt threatened by her and that she "verbally assaulted" him during this consultation by insulting his "intelligence and dehumaniz[ing] him." *Id.* ¶ 41-42. Arpin further claims that when he attempted to leave, Dr. Liang coerced him to stay, and a colonoscopy prerequisite was not discussed during the consultation. *Id.* ¶ 42.

On September 11, 2024, Arpin met with Dr. Lupis once again at WCCI medical, and Dr. Lupis advised Arpin that Dr. Liang "now required a prerequisite colonoscopy for his hernia surgery." *Id.* ¶¶ 45-46. Arpin claims that Dr. Lupis told him that he had never seen this requirement before, and he would seek a second opinion for him, so Arpin sent a written request to Dr. Lupin to follow up on the conversation. *Id.* ¶ 46. Arpin alleges that Dr. Lupis told him "he

---

[4] Dr. Nikelly is not named as a defendant in this action.

was at serious risk of death or permanent injury if the hernia strangulates." *Id*. ¶ 47. Arpin claims that "[i]mposition of an unnecessary colonoscopy has delayed the much needed hernia operation for another year, further endangering [his] life with each passing day." *Id*. ¶ 48.

On September 16, 2024, Arpin submitted a DOC Inmate Request Form inquiring about the status of the second opinion regarding the colonoscopy as a prerequisite to hernia surgery. *Id*. ¶ 49. Dr. Lupis responded, "no second opinion is being sought, surgery [and] colonoscopy are cancelled." *Id*. Arpin claims that Dr. Lupis' response confirms that Dr. Liang and Dr. Lupis were coordinated in requiring the colonoscopy. *Id*.

On September 20, 2024, Arpin submitted a Health Services Administrative Remedy ("HSAR") requesting a second opinion. Arpin further advised that the hernia had increased in size, putting him "at greater risk of death or serious injury." *Id*. ¶ 50. On October 24, 2024, the HSAR was denied, "stating that after discussion with Lupis, 'there is no option of a second opinion.'" *Id*. ¶ 51.

The day prior, on October 23, 2024, Arpin submitted a letter to Disability Rights Coordinator ("DRC") Gallagher in which he described the events that had occurred. *Id*. ¶ 57. In the letter, Arpin stated that he was concerned about "increased risk of death associated with being put under general anesthesia twice in a six-month period[,]" and he once again requested a second opinion. *Id*.

On November 25, 2024, Arpin filed a petition (No. 2024-1738) with the State of Connecticut Department of Public Health ("DPH"), "citing a quality of care complaint against [Dr.] Liang." *Id*. ¶ 61. Arpin claims that he attempted to contact the DPH numerous times, and his wife sent emails to DPH Supervisor Dalton requesting a follow up to the petition, but they never received a response. *Id*. ¶ 62. Arpin also claims that he called Supervisor Dalton multiple

times, but she did not answer. *Id*. ¶ 63. Finally, on January 13, 2025, Arpin spoke to Supervisor Dalton by phone, but Supervisor "Dalton said there was nothing they could do regarding his petition." *Id*. ¶ 64.

On January 27, 2025, DRC Gallagher responded to Arpin's letter that he had submitted on October 23, 2024. *Id*. ¶ 58. Arpin claims that DRC Gallagher "denied [and] disregarded his concerns[,] . . . [and that by her] own hand [and] records,  . . . she was fully aware that [he] was at risk of serious injury or death [and] required surgery to be conducted." *Id*. ¶¶ 58-59.

On February 25, 2025, Arpin had severe abdominal pain, and he was taken to the emergency room at Johnson Memorial Hospital. *Id*. ¶ 52. Arpin claims that he spent the morning in "acute pain from the hernia, which was at that time potentially strangulated." *Id*. While at the hospital, Arpin was treated by Dr. Goldwag, who asked Arpin why he waited so long for surgery on the hernia. *Id*. ¶ 53. Arpin claims that he told Dr. Goldwag he was required to have a colonoscopy before surgery, and Dr. Goldwag reacted by shaking his head. *Id*.

Arpin claims that the discharge papers diagnosed him "with a unilateral recurrent inguinal hernia, and referred him back to DOC outpatient evaluation for Hernia repair." *Id*. ¶ 54 (internal quotations omitted). Arpin claims that Dr. Goldwag's reaction, diagnosis, and follow up instructions "serve as a rebuke of [Dr.] Liang's coercion of [his] unnecessary medical testing . . . and unnecessary delaying correction of a potentially life-threatening condition." *Id*. ¶ 55. He also claims that Dr. Liang and Dr. Lupis colluded with the other co-defendants and others to deny him his surgery. *Id*. ¶ 56.

On March 25, 2025, Warden Thibeault spoke with Arpin and informed him that Dr. Freston, a physician assigned to Osborn CI and scheduled to testify against Arpin in a matter in Connecticut Superior Court, divulged the particulars of Arpin's medical condition. *Id*. ¶¶ 8, 70.

Arpin claims that Warden Thibeault also told him that "they" wanted him to undergo a colonoscopy because another inmate had the same surgery, and it was later found that he had colon cancer. *Id*. ¶ 71. Arpin claims that Dr. Freston had never met with or treated him, but was fully aware of his pain and suffering and the need for surgery. *Id*. ¶¶ 72, 77.

On September 15, 2025, Arpin submitted a Freedom of Information ("FOIA") request regarding the investigation conducted from his petition (No. 2024-1738). *Id*. ¶ 67. On September 29, 2025, the DPH reported that a search of the Department's files had been completed and there was no public record of the petition, complainant, or physician, and no records or information responsive to Arpin's FOIA request. *Id*. ¶ 67.

In summary, Arpin claims that he has suffered from a recurring hernia for over two and half years, and that defendants have delayed his treatment by forcing him to have a colonoscopy prior to the surgery. *Id*. ¶ 79. He further alleges that the hernia descends into his scrotum and that he has suffered additional complications from the hernia. *Id*. ¶¶ 79, 81, 86.

Arpin requests that I enter an injunction ordering: (1) the defendants to cease further delay of the operation needed to correct his hernia; (2) his hernia surgery to be performed at Yale New Haven Hospital ("YNH Hospital") by medical professionals having no connection to this suit; (3) a CT scan of his chest to create a baseline for future care related to his exposures to radon, PCBs, asbestos, and other carcinogens; and (4) the DOC to refer all future hospital care, surgery, and testing to be done by YNH Hospital. *Id*. ¶¶ 93-96. He also seeks declaratory relief, as well as compensatory and punitive damages. *Id*. ¶¶ 97-102.

## III.    DISCUSSION

Arpin brings claims against the defendants for deliberate indifference to his inguinal hernia in violation of the Eighth Amendment and the Fourteenth Amendment Equal Protection

Clause. He also alleges conspiracy claims, state law claims, and claims for violations of HIPPA and DOC Administrative Directives. Compl, Doc. No. 1 ¶ 86.

### A.  Eighth Amendment Claim

The Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). But "not every lapse in medical care is a constitutional wrong" and "'a prison official violates the Eighth Amendment only when two requirements are met.'" *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). A plaintiff pursuing an Eighth Amendment claim for deliberate indifference to medical needs must demonstrate both an objective and subjective element. *Spavone*, 719 F.3d at 138. Objectively, the plaintiff must allege that the "deprivation of adequate medical care" is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Subjectively, a defendant must have "kn[own] of and disregarded the plaintiff's serious medical needs." *Chance v. Armstrong,* 143 F.3d 698, 702. (2d Cir. 1998). The culpability required for a deliberate indifference claim exceeds mere negligence. *See Farmer*, 511 U.S. at 835-40.

"The judgment of prison doctors is presumed valid unless the prisoner provides evidence that the decision was 'such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment.'" *Harnage v. Lightner*, 2019 WL 319395, at \*7 (D. Conn. Jan. 24, 2019) (quoting *Nails v. Laplante*, 596 F.Supp.2d 475, 480 (D. Conn. 2009)) (citation omitted).

8

Deliberate indifference cannot "be found when a plaintiff 'simply prefers an alternative treatment or feels that he did not get the level of medical attention that he desired.'" *Perry v. Rupert*, 2016 WL 11478229, at *9 (N.D.N.Y. Apr. 19, 2016) (citation omitted).

I need not evaluate whether Arpin has adequately pled the objective and subjective elements for two reasons. First, Arpin has failed to plead anything other than conclusory allegations to support his claim that the defendants purposely denied him hernia surgery. Second, Arpin has refused to undergo a colonoscopy prior to the hernia surgery, which the defendants state is a prerequisite to scheduling the surgery. Doc. No. 26 at 12. Other than Arpin's own opinion and his bare allegations that other doctors had advised him that they believed that a colonoscopy was not necessary, Arpin has not alleged any facts to plausibly suggest that Dr. Liang's and Dr. Lupis' requirement that he undergo a colonoscopy was a substantial departure from accepted professional judgment, practice, or standards.

Furthermore, Arpin's allegations demonstrate that his refusal to undergo a colonoscopy constitutes a difference in desired course of treatment, and that this refusal has resulted in a delay with his hernia surgery. *See Gojcaj v. Naqvi,* 2023 U.S. Dist. LEXIS 201419 at *10 (D. Conn. Nov. 9, 2023) (plaintiff's disagreement with medical decisions to treat his keloid with steroids is not sufficient to state an Eighth Amendment violation); *see also Fenton v. Provow*, 2022 WL 3904110, at *8 (N.D.N.Y. Aug. 5, 2022), *R. & R. Adopted*, 2022 WL 3908799 (N.D.N.Y. Aug. 30, 2022) (plaintiff's "own refusal to comply with treatment seriously undermines his conclusory claims that the treatment provided by [the defendants] was constitutionally inadequate"); *Nichols v. Pesanti*, WL 356776, at *4 (D. Conn. Feb. 11, 2005) ("Courts considering this issue have found that delay in providing surgery for a reducible inguinal hernia is not deliberate indifference

9

to a serious medical need."). I dismiss Arpin's Eighth Amendment claim because he has not met his burden to plead that the defendants were deliberately indifferent to his serious medical needs.

## B. Additional Claims

Arpin also brings claims for violations of the Fourteenth Amendment's Equal Protection Clause, DOC Administrative directives, HIPPA, and state law.[5] *See* Compl., Doc No. 1 ¶¶ 86-90.

### 1. Fourteenth Amendment Equal Protection Clause

The Equal Protection Clause provides "that all persons similarly situated should be treated alike" by state actors. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). The highest level of constitutional scrutiny is applied to "those laws that burden a fundamental right or target a suspect class, such as those based on race, national origin, sex or religion." *Pedersen v. Off. of Pers. Mgmt.*, 881 F. Supp. 2d 294, 309 (D. Conn. 2012) (citation omitted). "[P]risoners in general are not a suspect class." *Brown v. Reis*, 2024 WL 4723333, at *7 (D. Conn. Nov. 8, 2024) (citations omitted). If the law does not implicate a fundamental right or target a suspect class, the law will survive constitutional scrutiny "so long as the law bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 (1996).

Absent a challenge to some sort of policy or enactment on behalf of a class, a plaintiff may still pursue an equal protection claim on a class of one theory. *Musco Propane, LLP v. Town of Wolcott*, 891 F. Supp. 2d 261, 272 (D. Conn. 2012). "A class-of-one claim exists 'where the [petitioner] alleges that [she] has been intentionally treated differently from others similarly

---

[5] I limit my review for purposes of 28 U.S.C. § 1915A to federal law claims because the purpose of an initial review order is to conduct a prompt initial screening to determine whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims, then I would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, my determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

situated and that there is no rational basis for the difference in treatment.'" *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (alteration added) (citation omitted).

Here, Arpin has not pled any allegations that suggest that he has been intentionally treated differently from other similarly situated inmates. I therefore dismiss Arpin's Fourteenth Amendment equal protection claim as not plausible under 28 U.S.C. § 1915A(b)(1).

### 2. Violation of Administrative Directives and HIPPA

Arpin also brings claims for violations of HIPPA and the DOC Administrative Directives. Compl., Doc No. 1 ¶¶ 74, 86-90. However, "[a] violation of or failure to follow an administrative directive does not state a claim of a violation of a federal or constitutionally protected right." *Jones v. Rodi*, 2020 WL 1820816, at *7–8 (D. Conn. Apr. 10, 2020); *see also Whitaker v. Evans*, 2019 WL 6700188, at *3 (D. Conn. Dec. 9, 2019) ("[D]efendants' failure to comply with prison regulations or administrative directives does not constitute a basis for relief under Section 1983 because 'a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983.'") (citation omitted). Likewise, HIPPA does not create a private right of action and cannot support a claim under section 1983. *See Rogers v. Rensselaer Cty. Sheriff's Dep't*, 2015 WL 4404788, at *7 (N.D.N.Y. July 17, 2015) ("It is well established that, because there is no private right of action under HIPAA, a violation of the Act cannot serve as the basis of a § 1983 claim.") (citing cases).

As such, to the extent Arpin has brought claims for violation of DOC Administrative Directives and HIPPA, such claims are not plausible.

### 3. State Law Claims

A district court has discretion to decline to exercise supplemental jurisdiction over a state law claim when there are no remaining federal claims. *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (noting that the court can exercise supplemental jurisdiction over a state law claim but "[t]he fact that the district court has the power to hear these supplemental claims does not mean, of course, that it must do so."). A court may decline to exercise supplemental jurisdiction based on the factors laid out in 28 U.S.C. § 1367(c). *See also Kaplan v. Cnty. of Orange*, 528 F. Supp. 3d 141, 160–61 & n.6 (S.D.N.Y. 2021) (declining to exercise jurisdiction over state law claims against certain defendants against whom no federal claims remained pending; discussing the court's discretion to do so; and citing cases). Because Arpin has failed to plead any plausible constitutional claims, I decline to retain supplemental jurisdiction over any state law claims.

## C.  Official Capacity Claims

Arpin requests that I enter an injunction ordering: (1) the defendants to cease further delay of the operation needed to correct his hernia; (2) his hernia surgery to be performed at Yale New Haven Hospital ("YNH Hospital") by medical professionals having no connection to this suit; (3) a CT scan of his chest to create a baseline for future care related to his exposures to radon, PCBs, asbestos, and other carcinogens; and (4) the DOC to refer all future hospital care, surgery, and testing to be done by YNH Hospital. Doc No. 1 ¶ 93-96. He also seeks declaratory relief and compensatory and punitive damages. *Id*. ¶ 97-102.

Individuals may seek injunctive or declaratory relief against a state official in their official capacity only to the extent that they allege an ongoing violation of the constitutional rights for which a federal court may enter an order of prospective relief against that official in his official capacity. *See, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011)

12

(citing *Ex parte Young*, 209 U.S. 123 (1908)); *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022).

Because Arpin has failed to sufficiently allege an ongoing constitutional violation, Arpin does

not have a basis to seek injunctive or declaratory relief from any defendant in their official

capacity.

I also observe that Arpin's specific injunctive requests would require me to insert myself

into medical judgments that are best suited for medical professionals. I cannot and will not do

that. Lastly, Arpin's request for CT scan of his chest to create a baseline for future care related to

his exposures to radon, PCBs, asbestos, and other carcinogens bears no connection to his

allegations in this case. Thus, I dismiss Arpin's official capacity claims against all of the

defendants.

## IV.    ORDERS

Consistent with the foregoing, I order the following:

(1)  I dismiss Arpin's complaint with prejudice against the defendants Dr. Byron

Kennedy, Colleen Gallagher, PA Hannah Sullivan, Dr. Freston, Dr. Lupis, Dr. Yu Liang, and

Dana Dalton in their individual and official capacities for failure to plead plausible constitutional

claims, as well as all claims for violations of HIPPA and DOC Administrative Directives. Arpin

previously brought an Eighth Amendment claim in a separate case before this court for denial of

the same hernia operation and I dismissed that claim as not plausible. *See Arpin v. Semple et al.,*

3:24-cv-01918-SRU, Doc. No. 15 at 11-12. Given the outcome of that case and the defendants'

representation that Arpin can undergo the hernia surgery if he first completes a colonoscopy, *see*

Doc. No. 26 at 12-14, amendment would be futile because Arpin cannot correct the deficiencies

of his claims identified in this Initial Review Order.

(2) I decline to exercise jurisdiction over any state law claims.

(3) The Clerk of Court is directed to terminate as defendants Dr. Byron Kennedy, Colleen Gallagher, PA Hannah Sullivan, Dr. Freston, Dr. Lupis, Dr. Yu Liang, and Dana Dalton and to close this case.

(4) All pending motions are denied as moot.

(5) The Clerk shall send a courtesy copy of this Order to the DOC Office of Legal Affairs and the Office of the Attorney General located at 165 Capitol Avenue in Hartford, CT 06106, and shall send a copy of this order by email to the Assistant Attorney General's (AAG) Office and DOC at rosemary.mcgovern@ct.gov; steven.barry@ct.gov; linda.hawes@ct.gov; nancy.canney@ct.gov; nancy.obrasky@ct.gov.

So ordered.

Dated at Bridgeport, Connecticut, this 27th day of July 2026.

/s/ STEFAN R.UNDERHILL
Stefan R. Underhill
United States District Judge

14